ROBERT M. HELFEND, SBN. 113380
23838 Pacific Coast Hwy, No. 309
Malibu, CA 90265
310-456-3317
Attorney for Defendant
MATTHEW C. LOCHER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| THE UNITED STATES OF AMERICA, Plaintiff, v. MATTHEW C. LOCHER, Defendant. | Case No. 2:21-cr-00581-1 DMG<br><br>DEFENDANT'S SENTENCING MEMORANDUM |
|---|---|

MATTHEW C. LOCHER, through Counsel, pursuant to 18 U.S.C. § 3553(a), hereby files his Sentencing Memorandum with which he respectfully requests this Honorable Court to exercise its discretion and impose a sentence below that suggested by the advisory Sentencing Guidelines. The mandatory minimum sentence of 180 Months (15 years) is Sufficient, but Not Greater than Necessary when considering the individual characteristics of Matthew C. Locher.

Dated: March 7, 2023                    Respectfully Submitted,

                                        /s/ Robert M. Helfend
                                         ROBERT M. HELFEND
                                        ATTORNEY FOR DEFENDANT
                                         MATTHEW C. LOCHER

## I. INTRODUCTION

As reflected in the Plea Agreement, Matthew acknowledged that he freely and voluntarily entered into the plea agreement because he was in fact guilty. When considering all the factors of Mr. Locher's offenses, his acknowledgment of responsibility, his age, educational background, vocational experience, childhood experiences, close family ties and responsibilities, as well as his remorsefulness, we respectfully request that this Court impose a sentence of one hundred and eighty (180) months incarceration.

Such a sentence is one that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing as required by 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552, U.S. 85, 101 (2007). A sentence of one hundred and eighty (180) months will satisfy the statutory goals of sentencing and will constitute a sentence that reasonably provides just punishment, protects the public, promotes respect for the law, affords adequate deterrence, and promotes rehabilitation as required by 18 U.S.C. § 3553(a)(2).

This memorandum:

(1) addresses all the factors set out in 18 U.S.C. § 3553(a), which the Court must consider in determining the sentence to impose;

(2) sets out the reasons why the facts of this specific case are unique; and

(3) explains why a sentence that includes more than 180 months imprisonment would be excessive and result in unwarranted disparity;

**Procedural History**

Beginning in July of 2020 and continuing until May of 2021, Matthew engaged in a series of online conversations, through multiple social media sites, with 3

underaged females, in which the minors would eventually perform acts of self-harm. The minors would send Mr. Locher nude pictures and videos of the self-harm.

On August 29, 2022, Matthew C. Locher pleaded guilty to Count 1of the 8 Count Indictment. Count 1 of the Indictment charges a violation of 18 U.S.C. §§ 2251(a), (e): Sexual Exploitation and Attempted Sexual Exploitation of a Child for the Purpose of Producing a Sexually Explicit Visual Depiction. The Government agrees to recommend a two or three-level reduction for acceptance of responsibility and to dismiss the remaining Courts of the Indictment. The parties also reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

B. **Sentencing Under the Guidelines**

**1. Base Offense Level**

The Parties stipulated to a base offense level of thirty-two (32) pursuant to USSG §2G2.1(a). USSG §2G2.1(b)(1)(B) stipulates for a 2-point increase if the minors are under 16 at the time of the offense. USSG §2G2.1(B)(4) provides for a 4-point addition if the offense involved sadistic abuse. USSG §2G1.3(b)(3) provides for a 2-level increase if the offense necessitated the use of a computer. USSG §2A1.1(b)(2)(1) allows for another 2 point upward adjustment where a particularly vulnerable victim is involved.  USSG §3D1.4/ 2G2.2(d) provide for a 3 point upward addition for grouping of multiple Counts. In this case, a total offense level of forty-five (45) is appropriate.

**2. Acceptance of Responsibility**

Both the Government and Probation recommend a 3-point downward departure for Matthew for his acceptance of responsibility. Mr. Locher joins in this request for a 3-point downward departure.

**3. Defense Calculation**

As stated above, Matthew's adjusted base offense level for a violation of 18 U.S.C. §§ 2251(a), (e) is 42. The applicable guideline recommendation for a level 42 offense is 360 months.

However, the Defense urges the Court to vary downwards from there utilizing the Court's power to do so based on the particular circumstances of this case and the nature and characteristics of Mr. Locher. A Sentence of one hundred and eighty (180) months is Sufficient, but not Greater than Necessary to promote justice.

**II. ARGUMENT**

   **A. Booker and 18 U.S.C. 3553(a)**

The decision of the United States Supreme Court in *United States v. Booker,* 125 S. Ct. 738 (2005), has rendered the United States Sentencing Guidelines "effectively advisory." *Booker* at 759-67. Pursuant to *Booker,* sentencing courts are required to consider a Defendant's guideline range, but may "tailor the sentence in light of other statutory concerns as well." *Id.* at 767 *(citing* 18 U.S.C. § 3553 (a)).

As a result of *Booker* federal district courts must consider the seven factors set forth by 18 U.S.C. § 3553 (a) in determining a sentence:

   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)   the need for the sentence imposed -

      (A)   to reflect the seriousness of the offense, to promote

      respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) [the applicable Sentencing Guidelines];

 (5) any pertinent [Sentencing Guidelines] policy statement;

 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) the need to provide restitution to any victim of the offense.

Moreover, § 3553(a) and the 'parsimony provision' mandate that the District Court "impose a sentence sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). Sufficiency of a sentence rather than excessiveness is echoed in 18 U.S.C. § 3582, which recognizes that "imprisonment is not an appropriate means of promoting correction and rehabilitation."

Under the advisory Guideline scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas*, 405 F.3d 814 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id*. *See also United States v. Menyweather*, 431 F.3d 692 (9th Cir. 2005) (finding that "[i]n the 'broader appraisal,' available to district courts after *Booker*, courts can now . . . have the discretion to weigh a

multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed "not ordinarily relevant," such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities).

Under *Booker* and *Gall,* "[t]he sentence is to be "individualized" and the Court must consider all of the sentencing factors enumerated in 3553(a) and "make an individualized assessment based on the facts presented." *Booker*, 125 S. Ct. 738 (2005); *Gall v. United States,* 552 U.S. 38, 50 (2007). While it may be a distinction without much difference, there is, in fact, a distinction between a sentence that results in a variance from the Guidelines based upon the Court's consideration of all the 3553 factors, and a sentence that is applied below the Guidelines as a result of certain downward departures found within the Guidelines. *See Irizarry v. United States*, 553 U.S. 708, 709 (2013); *see also Pepper v. United States*, 131 S. Ct. 1229, 1247 (2011).

For the reasons set forth above and below, Matthew's circumstances justify a 7-level downward variance based on relevant grounds found in the 3553(a) factors.

**B. Applying the Factors Contained In 18 U.S.C. § 3553(a)**

i.  **History and Characteristics of the Defendant**

Matthew is a 32-year-old, United States citizen, and has one maternal half-sibling named Amanda Lewis, age 35, who resides in San Bernardino, California, and is currently on maternity leave. Mr. Locher has never been married and does have a fiancé, Ruth Sanchez. Matthew and Ruth have been together since they were in high

school. The two attempted to get married in 2019, however they were unable to do so due to the Covid-19 pandemic. Ms. Sanchez currently lives in Torrance and is a teacher for adults with autism.

Matthew's father is John Locher, who he has not seen or had contact with since he was four years old. His mother, April Lewis, age 60, resides in San Bernardino, California, and is unemployed due to being disabled.

While Mr. Locher does not recall it and was told the story by his mother, April, Matthew believes that he was sexually abused by his father, J. Locher, while visiting him at the age of four. April Lewis told him that after returning from a visit with J. Locher, Matthew was terrified of getting in the shower and it took him several weeks to be comfortable with getting in the shower again. Mr. Locher and Ms. Lewis both believe that this fear was related to some form of sexual abuse, and that sexual abuse led to Matthew repressing his childhood memories.

Academically, Matthew reported struggling due to Dyslexia. Mr. Locher recalled struggling with Dyslexia since the age of five or six and reported having to take special education courses throughout school and still struggles with Dyslexia until the present day. While in middle and high school, Matthew started to have health problems related to an auto immune disease and asthma causing him to miss many days of school, but he was never held back or had to repeat classes.

Mr. Locher eventually went on to graduate high school and attended ITT Technical Institute and the Art Institute of California. Matthew obtained a job teaching HTML and coding, which began his career path, and he has spent much of his adult life teaching those subjects. Mr. Locher also founded a company, Game Gen, which

provides online classes to teach kids, teens, and adults on how to code and design video games.

From Dr. Malinek's Comprehensive Risk Assessment, attached, under seal, to this Sentencing Memorandum, the Doctor found that Matthew is "disgusted in myself. I needed something to detract myself. It was all about the trouble and the stress at work." Per Dr. Malinek, Mr. Locher believes that the mental collapse that Nick (his partner at work) experienced had exacerbated his own stress and stated that he was facing additional stressors from individuals who were invested in his business and had "30 million things on top of me" at the time of the crimes.

Matthew describes himself as a "broken, contrived, disreputable, and despicable man" and acknowledges that he ignored his own problems "and let them fester and rot inside."

Dr. Malinek reported that while incarcerated Mr. Locher has realized that as he grew up he "fell in love with all things technology" and eventually taught himself the fundamentals of computer programming. Matthew acknowledged that he slowly became "a regular on various websites that allowed him to be matched with random strangers to talk about any subject at all" and that it was in these random chats that he would flee to when he was upset, stressed, overwhelmed, or had dark thoughts about suicide. He stated that it was online that he was able to discuss his depression, loneliness, anxiety, and suicidal thoughts.

Through Dr. Malinek, Matthew has shown an understanding of his crime and true remorse by stating "He ends his lengthy letter by reiterating that "it is not Amanda, my mom, Mark [Mother's Ex-Husband], our interests," or his poor habits and that he

takes full responsibility for his actions and truly wishes he had sought therapy when it was available "instead of sinking so low." He acknowledged that he has "always struggled" to define his feelings and that "it is still nearly impossible for me to verbalize my personal issues."

Dr. Malinek opines that Mr. Locher suffers from "Paraphilia (Sexual Perversion) with Strong Elements of BDSM (Bondage, Discipline, Sadism and Masochism)."

Dr. Malinek found that Matthew's "need to control and abuse the victims in this case was clearly a rather marked departure into a deviant sexuality. It is not unlikely, as Ms. Sanchez has hypothesized, that it all grew out of his sense of inadequacy and lack of control, anger, and concomitant to efforts to obtain a sense of control "because his home life has always been so chaotic, and he never had a base or safety net."

Dr Malinek found "While theories on the development and the etiology of sexually sadistic urges have varied, most theorists agree that sexually sadistic urges originate in early developmental pairing of sexual urges, excitation, or arousal with aggressive stimuli which are later reinforced via sexual fantasy and masturbation. The histories of sexually deviant individuals vary and include experiences of trauma and sexual abuse as well as neglect, distortion, early and premature exposure to sexuality, anger towards caretakers, and other possible dynamics.

In this case, it appears that the communications Mr. Locher developed and the relationships that he cultivated with the teenage females involved significant elements of extreme control as well as a mixture of both anger and need to berate and dominate. Perhaps it reflected his own need to obtain a sense of mastery over feelings and beliefs that he was not loved or desired which later found relief in sexual release.

While the damage that he has caused cannot be underestimated I note again that Mr. Locher has never been in trouble with the law and has otherwise apparently had periods of steady employment. By his own account and that of his girlfriend, he attempted to be helpful to others. He impressed me as an individual with intellectual curiosity and verbal abilities and it is my understanding that he has developed rather sophisticated computer skills. The regret and remorse Mr. Locher has expressed in his writings and in the interview seem genuine. He openly discussed his history of consensual sadomasochistic activities with his long-term girlfriend, activities which were apparently consistently consensual. It is difficult to assess his current risk given that he will spend several years in custody. He is expected to conform to prison rules. If he will take the time to rehabilitate himself and participate in a comprehensive sex offender treatment program, the prognosis is not necessarily unfavorable."

While Dr. Malinek's report is not meant to excuse Matthew's behavior, it is submitted to this Court to provide some insight into the how and why Mr. Locher sunk himself in the dark place he situated himself in before his arrest.

Matthew has shown insight into his psychoanalysis, as well as genuine remorse, which is expressed in Mr. Locher's letter to this court.

### ii. **_Work History_**

From September of 2021 until January of 2022, Matthew was employed as an Independent Contractor in the Marketing Department of STEM Forged. The company is based in Idaho. While employed there, Mr. Locher earned approximately $3,500 a month. Matthew left this employment due to being arrested for the instant offense.

From 2016 to September of 2021, Mr. Locher was employed as the Chief Operations Officer at Game Gen in Hawthorne, California. While employed there, Matthew earned approximately $100,000 a year. Mr. Locher left this employment because he did not want the charges for the instant offence to affect the company's image.

From 2013 to 2016, Matthew was employed in various capacities at UCode in Beverly Hills, California. While employed there, Mr. Locher earned approximately $65,000 a year. Matthew left this employment to found his own company, Game Gen.

Throughout Matthew's adult life, he has been gainfully employed and productive.

### iii. *Acceptance of Responsibility*

Matthew is incredibly remorseful for committing this crime. Mr. Locher understands and appreciates that he committed an egregious violation of Federal law. He also understands the emotional damage he has done to his family.

Matthew has demonstrated that he can be a productive member of society. A sentence of one hundred and eighty (180) months would be "sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2).

### iv. *Criminal History*

As the Probation report notes, Mr. Locher has no criminal history.

### v. *The Need for the Sentence Imposed*

Section 3553(a)(2) lists the four purposes of sentencing, which can be summarized as: just punishment, deterrence, protection of the public, and rehabilitation.

### a. Just Punishment

A downward varied sentence for a youthful, 32-year-old man, with no history of criminal activity, and a family and fiancé that supports and wants him to excel, would satisfy the goals of sentencing. Matthew appreciates his transgressions and has worked hard to understand his issues which lead him down this dim pathway. Mr. Locher certainly seems interested and capable of developing insight into his transgressions. The advisory guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." *See United States* v. *Johnson,* 964 F.2d 124,125 (2nd Cir. 1992).

### b. Deterrence

Matthew has been a productive and beneficial member of society. He recognizes and accepts that he has violated Federal Law. He understands that the Court will fashion a sentence which the Court deems appropriate. However, he also acknowledges and assents that he will not participate in the same behavior in the future.

### c. Protection of the Public

Any argument that Matthew is a danger to the community is augmented by the productivity he has demonstrated through his employment history, and the caring and loving nature with his family and community. Attached are letters of support form Matthew's family and the community.

Mr. Locher's conduct through his life before becoming entangled in this matter suggests that the public need not be protected from him. *See United States* v. *Thomas,* 595 F. Supp. 2d 949, 952 (E.D. Wis. 2009) (wherein a probationary sentence

was imposed despite a guideline recommendation of imprisonment).

Matthew recognizes and accepts that he had an enormous lapse of good judgement. He understands that a sanction is appropriate. However, he also recognizes and accepts that he will not engage in the same conduct ever again.

With regards to rehabilitation, 18 U.S.C. § 3582 rejects the notion that imprisonment is an appropriate means of promoting correction or rehabilitation:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

In following this provision, a downward variance of 7 levels would be the more appropriate sentence for Mr. Locher. A level 35 provides for a sentencing range of 168 - 210 months.

### vi. The Kinds of Sentences Available

Pursuant to *Booker*, this Honorable Court has significant discretion in fashioning a sentence that is "reasonable" based on § 3553(a), including incarceration and supervised release. In the instant case, a guideline prison sentence would contravene 18 U.S.C. § 3553(a) and the 'Parsimony Provision' which proscribes the imposition of a sentence that is greater than necessary to achieve the statutory goals as set forth above.

**1. Use of a computer** - The provisions under USSG §2G1.3(b)(3) providing for a 2 - level increase for the use of a computer during this offense seems outdated and misplaced. Most crimes cannot be committed but for, the use of a computer. To

impose a 2 - level increase recommended by the Guidelines is arcane.

**2**. **Fine / Special Assessment** - Matthew's PSR indicates that it does not appear that he has the present or future ability to pay a fine or the increased special assessments.

Mr. Locher respectfully requests that the Court sentence him to one hundred and eighty (180) months or 15 years. Further, that the Court waive the fine and $5,000 special assessment. One hundred and eighty (180) months (15 years) will be sufficient to deter Matthew from ever committing another criminal act.

**III.    CONCLUSION**

Considering all the reasons above, and those presented at the Sentencing Hearing, Mr. Locher respectfully requests that this Honorable Court exercise its discretion and impose a downward variance.  Matthew requests that he be given a Sentence that is reasonable, but not greater than necessary and accounts for his age and past contributions to society and respectfully hopes that the Court Sentence Mr. Locher to (180) one hundred eighty months, consistent with the Statutory Mandatory Minimum Sentence. Matthew desires a recommendation for placement at a facility in Southern California, with a waiver of all fines and the $5,000 Special Assessment(s).

Dated: March 7, 2023               Respectfully Submitted,

                                    /s/ *Robert M. Helfend*
                                       ROBERT M. HELFEND
                                    ATTORNEY FOR DEFENDANT
                                       MATTHEW C. LOCHER

DECLARATION OF SERVICE

I, ROBERT M. HELFEND, declare that I am over eighteen years of age and not a party to the within cause; my business address is, 23838 Pacific Coast Hwy., No. 309, Malibu, California, 90265.

On March 14, 2023, I personally served a true copy, via email, of the attached DEFENDANT'S SENTENCING MEMORANDUM, on each of the following CM/ECF registered parties:

Chelsea Norell, AUSA
U.S. Attorney's Office
312 North Spring Street,
 14th Floor
Los Angeles, CA 90012
213-894-2624
Chelsea.Norell@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 14, 2023, at Malibu, California.

/s/ Robert M. Helfend
ROBERT M. HELFEND